BLANCHE, Judge.
This appeal arises out of a suit for damages brought by Mrs. Shirley Perry, wife of Paul Perry, in which her husband initially appeared as a party plaintiff to recover damages attributable to the community of acquets and gains. By amended petition Mrs. Shirley Perry alleged the termination of the community by judgment of separation prior to institution of these proceedings and prayed that all damages be awarded to her individually. Made defendants in the suit are Francis Achee and his public automobile liability insurer, New Hampshire Insurance Company.
Plaintiff alleged that on April 21, 1964, the automobile she was operating was struck from the rear by an automobile owned and being operated by Francis Achee, which accident occurred on Main *363 Street in Houma, Louisiana. Plaintiff further alleged that as a result of this accident she sustained severe personal injuries especially to her back. Defendants denied the occurrence of the accident, denied any negligence on the part of Francis Achee, and further pleaded that in any event plaintiff sustained no injuries or only minor injuries of temporary duration as a result of the alleged accident. After the case was tried and taken under advisement, the presiding judge rendered judgment in favor of plaintiff and against the defendants, in solido, in the sum of $18,354.67 with legal interest from judicial demand together with all costs, no reasons for the judgment being assigned. Defendants perfected this sus-pensive appeal.
Plaintiff’s version of the accident was that she was proceeding in a westerly direction along Main Street in Houma, Louisiana, where she brought her automobile to a stop behind preceding traffic pursuant to the direction of a traffic officer, and while in this stopped position her vehicle was rammed in the rear by the Achee vehicle. As a result of this accident plaintiff contended she sustained a severe injury to her back which ultimately necessitated her undergoing a spinal fusion at Mercy Hospital in New Orleans, Louisiana, on February 1, 1965.
Defendants contend that there was no ramming of plaintiff’s vehicle by the Achee vehicle, but on the contrary there was merely a “nudging” of the Perry vehicle in the rear by the Achee vehicle when defendant Achee inadvertently permitted his foot to release the brake whereupon the “creeping” motion inherent in the automatic transmission of his automobile started the vehicle moving forward. Defendant Achee contended that as soon as the forward motion was observed he immediately applied the brake again but not before the vehicles had come into slight contact.
Plaintiff offered the testimony of Robert Foreman, a member of the Houma City Police Department, who testified that the Achee vehicle did in fact strike the Perry vehicle from the rear at a speed estimated by him of eight to ten miles per hour at the time of impact. The record contains evidence to the effect that there was no damage sustained by the Achee vehicle as a result of the contact between the automobiles, and that the only possible damage sustained to the Perry vehicle was a slight dent in the rear bumper thereof. The accident was of such a minor nature that the police officer who was directing traffic at the intersection immediately in the front of the Perry vehicle testified he was not aware that any accident had occurred until he was summoned by the plaintiff.
It is obvious that the trial court concluuded after considering all the evidence that the Achee vehicle did in fact hit the Perry vehicle from the rear and that Achee was negligent in permitting his vehicle to do so. We are satisfied from a review of the record that these findings by the trial court are not manifestly erroneous.
There remains for consideration the important question of what if any injuries plaintiff sustained as a result of this accident. Dr. Thomas Givens, a general practitioner in Houma, testified that prior to this automobile accident of April 21, 1964, he had been treating the plaintiff for the past several months for a sciatica condition in the left leg and for low back pain in the left hip area which was precipitated by a fall sustained by plaintiff on November 28, 1963, while she was pushing a box along the floor of a jewelry store with her leg. Dr. Givens stated that his associate saw the plaintiff at the emergency room of the local hospital after the automobile accident, and Dr. Givens first saw her thereafter on April 23, 1964, at which time he diagnosed plaintiff as having sustained lumbosacral muscle strain. Because of her severe pain and marked restriction of back movements, he hospitalized her on April 23, 1964, and ordered her placed in traction, which treatment she received until April 29, 1964. She was discharged from the hospital on April 30, 1964, as having no muscle spasm. Dr. Givens stated that the muscle spasm he de *364 tected in the hospital and shortly after her release therefrom was localized on the left side, and her pain went only down the left leg. He stated that he next saw Mrs. Perry on May 6, 1964, at which time his examination revealed continued muscle spasm for which he prescribed pain relievers and physical therapy. Dr. Givens testified he next saw the plaintiff on May 14, 1964, at which time she was still experiencing back pain and muscle spasm. Because of her failure to respond to treatment, he referred her to Dr. George C. Battalora, Jr., an orthopedist, for further treatment.
Dr. Givens voiced the opinion that the automobile accident aggravated plaintiff’s condition and was therefore the ultimate cause of the subsequent spinal fusion, and in conjunction with this opinion minimized and in effect refused to attribute any significance to the injury sustained by the plaintiff in November of 1963. In this connection the following excerpts from Dr. Givens’ testimony are relevant:
“Q Now, being aware of her past medical history, and of course, being aware of your own findings and treatment, and after the November, ’63, incident at White Brothers, and keeping in mind that she did not miss any work from November to April, and she was able to do her housework, and further knowing about the automobile accident that she told you about, and your findings of local pain and problems in the lumbar sacrum area, and knowing of her hospitalization and subsequent course, what would you say was the precipitating events [sic], which set into motion the severe pain and disability, which commenced with your findings and hospitalization in April?
“A I think in my mind there is no doubt that the accident aggravated all of her symptoms, and actually made them more extensive than they were before.
“Q That’s the automobile accident you are speaking of ?
“A Yes.”
“(Trans., pp. 215, 216)
>}{ >jc ifi
“Q Would an injury or a strain to the leg, or a pulled muscle, or what have you, as was sustained by Mrs. Perry in November, naturally result in a generalized backache?
“A Well, a strain could do that, but actually Mrs. Perry was getting better. She was working all the time that I was treating her for this condition, and her back complaint was minor. And she was actually getting a great improvement as the weeks went by until the accident.”
(Trans., p. 214)
In refutation of this opinion counsel for defendants elicited from Dr. Givens the fact that plaintiff was still complaining of pain from the November, 1963, incident through' April of 1964 and before the automobile accident (Trans., p. 214), the fact that Dr. Givens had diagnosed plaintiff to have sustained a lumbosacral strain on the left with sciatica, which was the same area where he detected lumbosacral strain subsequent to the accident in April of 1964 (Trans., pp. 221, 222), the fact that Dr. Givens detected muscle spasm in plaintiff’s back on both sides as late as March 6, 1964 (Trans., p. 225), the fact that Dr. Givens’ medical record of April 23, 1964, or two days following the automobile accident, contained the entry “Still spasm and numbness” (Trans., p. 226 — emphasis added), the fact that plaintiff was still under Dr. Givens’ treatment from the November, 1963, incident at the time of the automobile accident in April of 1964 (Trans., p. 227), and the fact that as late as April 1, 1964, Dr. Givens made a house call to examine the plaintiff for complaints related to her back (Trans., pp. 229, 236).
Dr. Givens was asked to read the first part of the rewrite by him of the history *365 appearing in the hospital record in connection with plaintiffs admission on April 23, 1964, which read as follows:
“In the latter part of 1963, while working at White Brothers, fell and injured back, used heating pad, and acute pain disappeared. However, after several days the pain began to be marked, and has had almost no constant relief since. Seen in my office the same month.” (Trans., p. 219)
Dr. Givens was also asked to read from a medical report he wrote on July 12, 1965, which read as follows:
“Mrs. Perry was seen November 30th, 1963, after having fallen in White Brothers Jewelry Store November 28th, 1963. She immediately experienced pain in the back area, especially in the left hip, which became progressively worse, causing her to walk with a limp at all times. On examination there was apparent muscle spasm of the lower back area, and she was unable to flex or extend her back without severe pain.” (Trans., pp. 219, 220)
At a later point in his testimony Dr. Givens was asked to read a further portion of this report, which he read as follows:
“The patient had postive [sic] leg raising and reflexes on the left leg and suggested positive on the right. She was placed on analgesics, antispasmodics, Bi injections, heat applications, and referred to Ken Barrilleaux, registered physical therapist. She did not show any signs of improvement, and was referred to Dr. George Battalora.” (Trans., p. 232)
Dr. Givens volunteered that this last quoted part of the report was “a real confusing statement,” the obvious “confusion” being the fact that it failed to make any mention of the intervening automobile accident.
In this connection we also note that Dr. Givens’ “specially prepared bill” introduced in evidence (Plaintiff Exhibit No. 7) likewise makes reference to the accident of November 28, 1963, without any reference being made to the automobile accident of April 21, 1964.
Dr. George C. Battalora, Jr., testified that he first saw the plaintiff pursuant to Dr. Givens’ referral on May 18, 1964, at which time she gave the history related to the November, 1963, incident but stated she had no back pain at that time. Dr. Batta-lora offered the opinion that inasmuch as plaintiff stated her back had been asymptomatic since age thirty, or roughly six years before the incident in question, he would have to assume from the history given to him by the patient that her injury of April 21, 1964, produced an aggravation of a preexisting condition at the lumbosacral joint resulting in a back strain, which situation was remedied by surgery when conservative treatment failed to afford relief:
“Q You gave us a very thorough and what I feel is a complete resumé of her past history as she related it to you. Based on the past medical history and your observation and your operation on her, and as well as you can determine by medical certainty, what caused or precipitated her condition?
“A You mean her painful—
“Q Her painful condition that ultimately resulted in the lumbosacral fusion ?
“A These X-ray changes, of course, that we saw at the time of our first examination were not a result of any specific recent injury. These are changes that have taken place over a period of years. I would not be surprised that she has had considerable difficulty with her back in the past on the basis of my X-ray findings. So we have to assume then that the changes were pre-existing. Now, she told me that she had been asymptomatic since age 30, which is roughly six years. So we have to assume from the history that the patient gave us that the in *366 jury of April 21st, 1964, produced an aggravation of a pre-existing condition at the lumbosacral joint, and produced a back strain. This failed to respond, and as a result surgery was performed.
“Q And the accident that you refer to on April 21, 1964, she told you that that was an automobile accident?
“A That was an automobile accident, and that was the first time that she had had back pain.”
(Trans., pp. 171, 172)
When counsel for defendants presented Dr, Battalora with a more accurate summary of the November, 1963, accident and injury, Dr. Battalora stated that in his opinion the November, 1963, fall and resulting injury would be the cause of her subsequent difficulties and not the April 21, 1964, automobile accident. In this connection the following excerpts from the testimony are relevant:
“Q Doctor,' let’s get back for a moment, if you will, to the statement that Mrs. Perry made to you in the history. As I recall your testimony, you testified that she told you that she had been asymptomatic for a period of six years, since age 30?
“A Yes, sir.
“Q Is that correct?
“A Yes, sir.
“Q Would it make any material difference in your opinion if I told you that she had not been asymptomatic since age 30 ?
“A Yes, sir.
“Q Doctor, suppose I told you that as a result of the November, 1963, incident, that instead of having a pulled muscle in the leg, or leg strain, that she was examined and treated by a medical doctor, and that that doctor stated the following: ‘Mrs. Perry was seen November 30, 1963, after having fallen in White Brothers Jewelry Store November 28, 1963. She immediately experienced pain in the back area, especially in the left hip, which became progressively worse, causing her to walk with a limp at all times. On examination there was apparent muscle spasm of the lower back area, and she was unable to flex or hyper-extend her back without severe pain. The patient had positive leg raising reflexes of the left leg, and suggested positive of the right leg.’ Now, if you had been given that history instead of the history given to you for the November, 1963, incident, would it be your opinion that any difficulty she might be having in her back were a result of the November incident, rather than that of the April incident ?
“A I would have to assume that the onset had occurred from the fall.
“Q In the November, 1963, incident?
“A Yes, sir.
“Q So that her difficulties would have been caused there, rather than in the April incident in your opinion?
“A With those type of findings, yes, sir. Unless this thing had subsided rapidly, that would be the only qualification I could put. Of course, I wouldn’t know what happened to her in those six months.”
(Trans., pp. 186, 187)
jfc % ‡ * * *
“Q Suppose you were given the additional history that in May of 1959, she was treated for an acute lum-bosacral strain, and the patient was unable to extend from the flexed *367 position, having spasm of the lumbar muscles. In 1961 and 1962, she was also treated for the same condition, and again in February and March of 1963, and you put that history together with the history I just gave you in November of 1963, what would be your opinion, doctor?
“A She had been having back trouble fairly consistently for the past six years.
“Q Would that make a material difference in your diagnosis or your opinion?
“A My diagnosis, of course, from my examination would not be changed. My opinion as to what caused it would be changed.
“Q In what respect would it be changed, doctor ?
“A I would assume that the precipitating factor of the back trouble would have been the fall in November of ’63.”
(Trans., pp. 187, 188)
Dr. Battalora indicated he would expect a patient such as the plaintiff to recover from a mild strain such as the type she may have received in this accident within three to four months (Trans., p. 181), and that he would have recommended the spinal fusion on the basis of her failure to respond over the period of time even if the automobile accident of April 21, 1964, had not occurred due to her unstable back condition. (Trans., pp. 178, 193)
Dr. Edward T. Haslam, an orthopedist, examined plaintiff on behalf of defendants on January 18, 1965, at which time he also was given a history that her back did not hurt her as a result of the November 28, 1963, incident. Dr. Haslam gave the opinion that the accident of April 21, 1964, did not materially influence her back condition and that whatever aggravation may have resulted therefrom was merely of a temporary nature from which she should recover within a matter of a few weeks at the most. (Trans., p. 320) In this regard the following testimony of Dr. Haslam is relevant:
“Q Again assuming that the incident of April, 1964, did conceivably cause some influence or aggravation on the unstable back condition of Mrs. Perry, you have stated in your opinion that it would be temporary of [sic] a few weeks duration at most before she could return to the condition she was in prior thereto, is that correct?
“A Yes, sir.
“Q In order for there to be a permanent influence or a significant influence on her back, in your opinion, doctor, what would have been necessary to have occurred?
“A From an orthopedic standpoint it has been our experience that unstable backs and arthritic spines are not permanently aggravated by accidents that don’t involve fractures, tearing of ligaments, or ruptured muscles, and other things that cause major acute incapacity, although they may seem to be made temporarily worse by a lesser accident.
“Q Now, in the history given you by Mrs. Perry, and the information furnished you by Dr. Battalora’s report, did you find anywhere any evidence to indicate that Mrs. Perry sustained any type of condition, such as you have just described, that is broken bones, ruptured muscles, torn ligaments or anything of that sort, to bring about a permanent condition?
“A No, sir.”
(Trans., p. 325)
In addition to the November 28, 1963, incident, defendants offered the testimony of Dr. John Flynn, a chiropractor, who stated *368 he treated plaintiff in May of 1959 for acute lumbosacral strain which was so severe that plaintiff was unable to get out of a bent-over position. Dr. Flynn further stated that he treated plaintiff on subsequent occasions in 1961, 1962 and 1963 for what he described as lumbosacral strain conditions (although his testimony with regard to some of these alleged treatments was indecisive in certain respects). Defendants further introduced by stipulation the medical report of Dr. Paul T. Ray, which indicated that plaintiff was hospitalized on September 1, 1958, for lumbo-sacral strain which was treated by use of traction. (Defendant Exhibit No. 5)
Plaintiff, of course, in order to recover bears the burden of proving not only the occurrence of the accident and the negligence of the defendant, but also the existence and extent of injuries and damages sustained by the plaintiff resulting therefrom.
We are satisfied from our review of the record that plaintiff failed to give an accurate history of her back condition to Dr. Battalora and to Dr. Haslam, which conclusion is especially obvious from a comparison of the asymptomatic history related by plaintiff to Dr. Battalora with the back difficulties and various episodes of lumbo-sacral strain experienced by plaintiff during the years immediately preceding the accident in question. This inconsistency is further evidenced by plaintiff’s judicial admissions in her pending workmen’s compensation suit for total and permanent disability wherein she alleged she sustained, inter alia, a disabling back injury resulting from her fall at her place of employment with White Brothers Jewelry Store on November 28, 1963. (Defendant Exhibit No. 7) It is well settled that a medical opinion based on an inaccurate history given by the patient is of little value, Hawkins v. Aetna Casualty and Surety Company, 221 So.2d 588 (La.App.3rd Cir. 1969); Causey v. Hartford Accident & Indemnity Company, 94 So.2d 128 (La.App. Orleans Cir. 1957), writ denied.
We are satisfied from our review of the evidence that plaintiff has failed to prove by the requisite preponderance of the evidence that she sustained any more injury than a minor lumbosacral strain which caused some temporary aggravation of her preexisting back condition but which resulted in no permanent injury, nor do we feel plaintiff has carried the burden of proving that the accident sued on necessitated the spinal fusion which she subsequently underwent. The opinion of Dr. Givens that the April 21, 1964, accident precipitated these severe injuries and the necessity for surgery, aside from being suspect in view of the inconsistencies in Dr. Givens’ testimony, is opposed by the opinion of Dr. Battalora, the treating orthopedic specialist, as well as the opinion of Dr. Haslam. The evidence simply does not preponderate in favor of plaintiff’s contentions relative to severe injuries and damages resulting from the accident sued on.
We are satisfied that plaintiff has proven that she sustained a mild lumbo-sacral strain as a result of the accident which necessitated certain medical treatment including hospitalization and traction and which caused some temporary aggravation of her back condition. We feel an award of $1,500 general damages adequately compensates plaintiff for her injury and related pain and suffering. We are also satisfied that plaintiff has proven her right to recover the following special damages: Dr. Thomas H. Givens, $53.00; Houma Medical Clinic Lab, $15.00; Terrebonne Parish General Hospital, $136.85; Family Drugs, Inc., $6.07; total, $210.92.
Accordingly, the judgment appealed from is amended so as to reduce the award in favor of plaintiff from $18,354.67 to $1,-710.92, with legal interest thereon from judicial demand until paid. In all other respects the judgment appealed from is affirmed, with all costs of these proceedings assessed to defendants-appellants.
Amended and affirmed.